IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GURMIT SINGH, aka<br>Manjeet Singh,<br>Agency No. A72-691-014 &<br>Agency No. A72-482-782 | )<br>)<br>)<br>)<br>) |
| Petitioner, | )  CIV 08-01901 PHX MHM (MEA)<br>) |
| v. | )  REPORT AND RECOMMENDATION<br>) |
| CHRIS VASQUEZ, KATRINA KANE,<br>JULIE L. MEYERS, JONATHAN<br>SCHARFEN, MICHAEL CHERTOFF,<br>MICHAEL B. MUKASEY, | )<br>)<br>)<br>) |
| Respondents. | )<br>) |

TO THE HONORABLE MARY H. MURGUIA:

Mr. Gurmit Singh ("Petitioner), who is represented by counsel in this matter, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on October 16, 2008.  On October 23, 2008, the Court ordered Respondents to answer the petition within 20 days of service.  See Docket No. 6. Respondents were instructed not to file a motion to dismiss the petition rather than an answer to the petition without first receiving leave of the Court to do so.  See id.

On November 29, 2008, Respondents lodged a Motion to Dismiss the Petition for a Writ of Habeas Corpus and Complaint for Declaratory Judgment, and filed a motion seeking permission to file a motion to dismiss rather than an answer to the

petition on December 1, 2008.  <u>See</u> Docket No. 18 & Docket No. 21.  The motion for leave to file a motion to dismiss was granted.  <u>See</u> Docket No. 22.  Petitioner filed a response in opposition to the motion to dismiss on January 3, 2009.  <u>See</u> Docket No. 24 ("Response").  Respondents filed a reply in support of their motion on January 9, 2009.  <u>See</u> Docket No. 25.

### I.  Relevant terms and statutory and regulatory regime

The "entry fiction" of United States immigration law provides that a non-citizen individual has not "entered" the United States unless and until they have been inspected by federal immigration officials and officially allowed into the United States, notwithstanding the non-citizen's actual physical presence within the geographical boundaries of the country.  The non-citizen may be allowed into the United States from a port of entry without having "entered" the United States, via a grant of parole.  <u>See</u>, <u>e.g.</u>, Allison Miller, *Lock Them Up and Throw Away the Key*, 52 Wayne L. Rev. 1503 (2006); Allison Wexler, *The Murky Depths of the Entry Fiction Doctrine*, 25 Cardozo L. Rev. 2029 (2004).

A "paroled" alien is one who is temporarily permitted to remain in the United States pending a decision on an application for their formal admission.  <u>See</u> 8 U.S.C. § 1182(d)(5) (2005 & Supp. 2008).  Although a paroled alien is "given liberty to roam the country," the alien is considered legally detained at the border within the custody of the relevant federal agency as it determines the alien's immigration status.  <u>Chavez-Rivas v. Olsen</u>, 207 F. Supp. 2d 326, 328 (D.N.J. 2002).  In the context of whether a paroled alien has "entered"

the United States, "[parole] amounts to permission by the Attorney General for ingress into the country but is not a formal 'admission'" under the Immigration and Naturalization Act ("INA")." Chi Thon Ngo v. INS, 192 F.3d 390, 392 (3d Cir. 1999) (citations omitted); see also 8 U.S.C. § 1182(d)(5)(A) (2005 & Supp. 2008). Accordingly, pursuant to the entry fiction doctrine, an alien within the United States who is there by means of parole has not "entered" the United States.

The distinction between aliens who have "entered" the country and those who have not is significant because aliens who have entered the country are entitled to procedural due process, whereas aliens who may be physically within the country but who are requesting admission to the United States (including paroled and inadmissible aliens) must be content with "whatever process Congress has authorized" with regard to their immigration proceedings and any resulting loss of their liberty. See Borrero v. Aljets, 325 F.3d 1003, 1007 (8th Cir. 2003). See also Zadvydas v. Davis, 533 U.S. 678, 693, 121 S. Ct. 2491, 2500 (2001).[1]

---

[1]
The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. []. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. []. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

1     Federal statutes limit the Attorney General's authority
2 to parole a refugee into the United States rather than admitting
3 them as a refugee.  See 8 U.S.C. § 1182(d)(5)(B) (2005 & Supp.
4 2008).  An immigrant is a "refugee" if they are unwilling or
5 unable to return to their native country because of persecution
6 or a well-founded fear of persecution on account of race,
7 religion, nationality, membership in a particular social group,
8 or political opinion.  8 U.S.C. § 1101(a)(42)(A) (2005 & Supp.
9 2008); Karapetyan v. Mukasey, 543 F.3d 1118, 1125 (9th Cir.
10 2008).  The Attorney General is authorized, in his discretion,
11 to confer a grant of asylum upon a refugee.  See 8 U.S.C. §
12 1158(a) (2005 & Supp. 2008); Gulla v. Gonzales, 498 F.3d 911,
13 915 (9th Cir. 2007).[2]  An alien who is a refugee may apply for
14 either asylum or a restriction on their removal.  See Wiransane
15 v. Ashcroft, 366 F.3d 889, 893 (10th Cir. 2004) ("A grant of
16 asylum permits the alien to remain in this country; a
17 restriction on removal forbids removal of the alien to the
18 country where persecution may occur").

19     A grant of asylum is provisional in nature and may be
20 terminated at the discretion of the Attorney General.  See 8
21 U.S.C. § 1158(c)(2) (2005 & Supp. 2008) (providing that a grant
22 of asylum "does not convey a right to reside permanently in the
23 United States" and may be terminated); Nuru v. Gonzales, 404
24 F.3d 1207, 1229 (9th Cir. 2005) (noting the discretionary nature
25 of the Attorney General's authority under section 1158).  A

26 _____

27          [2] "Asylum is a two-step process, requiring the applicant
first to establish his eligibility for asylum by demonstrating that
28 he meets the statutory definition of a 'refugee,' and second to show
that he is entitled to asylum as a matter of discretion..."

grant of asylum is not equivalent to a finding that an immigrant is entitled to the withholding of removal based on a well-founded fear of persecution and requires a lesser showing than that required for withholding of removal. <u>See</u> <u>Delgado v. Mukasey</u>, 546 F.3d 1017, 1030-31 (9th Cir. 2008) (Berzon, J., dissenting); <u>Burger v. Gonzales</u>, 498 F.3d 131, 136 (2d Cir. 2007) ("an applicant who fails to qualify for asylum necessarily fails to qualify for withholding of removal.").

In 1993, when Petitioner first arrived in the United States, the Immigration and Naturalization Service ("INS") could institute exclusion proceedings against an alien who had not "entered" the United States.   Exclusion proceedings were ordinarily begun when an examining immigration officer at a port of entry detained an arriving alien who was not entitled to enter the United States because they did not have a valid visa or passport.   Generally, the alien was ordered to appear at a hearing conducted before an Immigration Judge ("IJ").   <u>See</u> 8 U.S.C. § 1225(b) (1995).   The IJ would determine whether the alien was admissible, i.e., eligible for lawful immigrant or non-immigrant status, whether the alien was excludable and should be physically removed, and whether an excludable alien might be entitled to relief from exclusion, *inter alia*, based on their request for asylum.

> The Immigration and Nationality Act creates two types of proceedings by which aliens may be removed from the United States. Deportation proceedings are used when aliens have already entered the United States and are sought to be removed. Exclusion proceedings are employed when the alien has not yet entered the country, but is detained in effect at the border.[] Generally, an

-5-

> alien in deportation proceedings possesses greater substantive rights than one in exclusion proceedings.[].
> An individual may obtain relief from a deportation or exclusion decision by seeking asylum pursuant to 8 U.S.C. § 1158 or withholding of deportation pursuant to 8 U.S.C. § 1253(h). *An alien granted asylum may not be deported absent revocation of that status*. While one as to whom deportation is withheld may not be deported to a specific country in which he would be persecuted, he may still be deported to some other country should one be found that will accept him. See Pierre v. Rivkind, 825 F.2d 1501, 1504 (11th Cir. 1987).

Singh v. United States INS, 965 F. Supp. 724, 728 (D. Md. 1997) (emphasis added).[3]

Federal immigration statutes provide that, if an asylum officer who interviews an arriving alien who does not have a proper visa determines that the alien has a credible fear of

---

[3] In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") eliminated the distinction between "exclusion" and "deportation" proceedings, and replaced these two types of proceedings with a single "removal" proceeding. See, e.g., Abebe v. Mukasey, ___ F.3d ___, 2009 WL 50120, at *14 n.2 (9th Cir.); Zamora-Mallari v. Mukasey, 514 F.3d 679, 687 n.2 (7th Cir. 2008). However, the "removal" procedures apply only to immigration proceedings initiated on or after April 1, 1997. See Barapind v. Reno, 225 F.3d 1100, 1106 (9th Cir. 2000).

> "Excludable aliens" was the term used prior to the enactment of IIRIRA to describe aliens who were ineligible for admission or entry into the United States. IIRIRA now refers to inadmissable aliens in the place of excludable aliens. ... the distinction now turns on whether an alien has been 'admitted' to the United States, rather than on whether the alien gained 'entry.' "Inadmissible" aliens therefore include aliens who have not entered the United States (formerly considered excludable) and those who, like petitioners, entered illegally (formerly deportable).

American-Arab Anti-Discrimination Comm. v. Ashcroft, 272 F. Supp. 2d 650, 668 (E.D. Mich. 2003) (internal citations and quotations omitted).

persecution, the alien shall be detained for further consideration of their application for asylum.   <u>See</u> 8 U.S.C. § 1252(a)(2)(B)(ii) (2005 & Supp. 2008).   The Attorney General can, and often does, release the alien on parole pending a resolution of their application for asylum.   <u>See</u> <u>id.</u>; <u>id.</u> § 1182(d)(5)(A); 8 C.F.R. § 212.5 (2008).

## II. Factual and procedural background

Petitioner is a native and citizen of India.   <u>See</u> Motion to Dismiss the Petition for a Writ of Habeas Corpus and Complaint for Declaratory Judgment ("Motion to Dismiss") (Docket No. 18), Exh. A.   While in India, Petitioner was an active member of an organization which advocated for the creation of an independent Sikh state within the territorial boundaries of India.   <u>See</u> Response (Docket No. 24) at 2.   Petitioner alleges that members of this organization, including Petitioner, were arrested and beaten by police for their activities.   <u>Id.</u>

On April 9, 1993, Petitioner came to the United States from India, arriving at a port of entry at a New York area airport on a British Airways flight.   <u>See</u> Motion to Dismiss, Exh. A & Exh. B.   Upon his arrival in the United States Petitioner told agents of the Immigration and Naturalization Service ("INS") that his name was Manjeet Singh and that his date of birth was June 25, 1955.   <u>Id.</u>, Exh. A & Exh. B & Exh. D. At that time, the INS detained Petitioner "at the border" as an alien who was excludable from the United States.   <u>Id.</u>, Exh. B.[4]

---

[4] Petitioner was deemed excludable pursuant to 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and 1182(a)(7)(b)(i)(I) and (II), because he did not have valid traveling documents.

1   Petitioner told the INS inspectors that he wished to apply for
2   political asylum in the United States, citing a fear of
3   persecution if he returned to India.  <u>Id.</u>, Exh. C & Response at
4   2.

5        The same day Petitioner arrived and was detained at the
6   border the INS initiated exclusion proceedings against
7   Petitioner.  Motion to Dismiss, Exh. E.  The INS initiated those
8   proceedings by serving Petitioner with a "Form I-122", charging
9   Petitioner with being excludable from the United States because
10  he did not possess a valid visa or traveling documents.  <u>See</u>
11  <u>id.</u>, Exh. B & Exh. E.  The Form I-122 notified Petitioner that
12  an  Immigration Judge ("IJ") would hold a hearing to determine
13  whether or not Petitioner should be allowed to enter the United
14  States.  <u>Id.</u>, Exh. E.  The Form I-122 notified Petitioner the
15  hearing would be held in New York on August 12, 1993.  <u>Id.</u>, Exh.
16  B & Exh. E.  Petitioner was released, i.e., "paroled" into the
17  United States on April 9, 1993, and his presence in the United
18  States was classified as "deferred admission."  <u>Id.</u>, Exh. D.

19       On August 12, 1993, an IJ held the noticed hearing in
20  New York, from which hearing Petitioner was absent.  <u>Id.</u>, Exh.
21  F.  The IJ concluded Petitioner was excludable from the United
22  States pursuant to section 212 of the INA, codified at 8 U.S.C.
23  § 1182.  <u>Id.</u>, Exh. F.  At that time the IJ ordered Petitioner,
24  be excluded from and deported from the United States pursuant to
25  8 U.S.C. § 1182(a)(7)(A)(i)(I).[5]   <u>Id.</u>, Exh. F

26  _____

27       [5] In 1993 this section provided:
        Except as otherwise specifically provided in this
28      chapter, any immigrant at the time of application
        for admission--

-8-

On May 25, 1993, approximately six weeks after his arrival in New York but before the date of the IJ hearing from which Petitioner was absent, Petitioner applied for asylum at an INS office in San Francisco, California.   Petitioner applied using his real name, i.e., Gurmit Singh, and using his real birth date of June 28, 1955.   Id., Exh. G.   Petitioner now alleges that he did not appear for the IJ hearing because, upon his release from INS custody in New York pending the hearing, he was "still afraid and confused about his future in the United States...."   Response at 2.   Accordingly, Petitioner "departed New York for California" and filed his application for asylum using his real name prior to the date set for the hearing in New York regarding his excludability.

On the asylum application filed in San Francisco on May 25, 1993, Petitioner asserted he entered the United States in April of 1993 at San Ysidro, California.   See Motion to Dismiss, Exh. G.   Petitioner alleged he had entered the United States without inspection.   Id., Exh. G.   Petitioner further requested asylum for his wife and four children.   Id., Exh. G.

More than three years later, on October 15, 1996, the San Francisco Asylum Office of the INS granted Petitioner's application for asylum, finding he had established a well-

_____

(I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title... is excludable.

founded fear of persecution if he returned to India.  Id., Exh. G.  On October 29, 1996, the INS informed Petitioner via a letter that his application for asylum had been granted in accordance with section 208 of the INA, codified at 8 U.S.C. § 1158.  Id., Exh. H.  The notification included an "I-94" document.  Id., Exh. H.[6]  Petitioner was informed that he could apply for adjustment of his alien status to that of a lawful permanent resident, pursuant to section 209(b) of the INA, codified at 8 U.S.C. § 1159, provided he remained physically present in the United States until October 15, 1997.  Id., Exh. H.

Petitioner filed for an adjustment of status to that of lawful permanent resident on February 20, 1998.  Id., Exh. I. The application for adjustment of status was filed in the name Gurmit Singh and stated Petitioner's date of birth as June 28, 1955.  Id., Exh. I.  The application averred Petitioner had entered the United States "without inspection" in California. Id., Exh. I.  In response to the question "Have you ever been deported from the U.S., or removed from the U.S. at government expense, excluded within the past year, or are you now in exclusion or deportation proceedings?", Petitioner answered "No." Id., Exh. I.[7]  Petitioner also declared he had not by fraud nor misrepresentation attempted to gain documentation, entry

_____

[6] At least one federal court has concluded, in a completely different context, that the issuance of a Form I-94 granting asylum constitutes "admission" of the alien to the United States.  See Tanov v. I.N.S., U.S. Dep't of Justice, 443 F.3d 195, 201 (2d Cir. 2006).

[7] The undersigned notes Petitioner had not, at that time, been deported or removed from the United States, nor had he been excluded within the year previous to his application.

-10-

1   into the United States, or any other "benefit."   Id., Exh. I.

2           On May 13, 1999, Petitioner drafted a sworn document

3   "amending" his prior application for a change of status to

4   lawful permanent resident.   Id., Exh. J.   Petitioner informed

5   the INS that he had been subject to exclusion proceedings.   Id.,

6   Exh. J. Petitioner admitted that, when he arrived in New York in

7   1993, he was apprehended by the INS and granted deferred

8   inspection.   Id., Exh. J.

9           Petitioner alleges that, on August 5, 1999, the INS

10  asked Petitioner to furnish the name and date of birth he used

11  at the time he entered the United States in April of 1993.

12  Response at 3.   Petitioner alleges: "Said letter requesting

13  further information did not state or provide notice or warning

14  to Mr. Singh that his asylum status could be affected in any way

15  by information regarding his exclusion proceedings." Id. at 3.

16  Through his then-counsel, Petitioner supplied the required

17  information regarding his attempted 1993 entry in New York.   Id.

18          On October 13, 1999, the INS rescinded the grant of

19  asylum afforded Petitioner.   See Motion to Dismiss, Exh. K.   The

20  INS informed Petitioner via a letter that, because Petitioner

21  had filed his California asylum application under a different

22  name than the one used when arriving in New York, the INS did

23  not realize Petitioner had been ordered excluded when it granted

24  him asylum.   Id., Exh. K.   The letter notified Petitioner that,

25  because immigration judges have "exclusive jurisdiction over

26  asylum applications filed by an alien who has been served [with

27  a] ... Form I-122 ...," Petitioner's asylum status was revoked

28  as improperly granted.   Id., Exh. K.

-11-

The INS correspondence to Petitioner concluded:

> The INS did not have jurisdiction over your asylum application, because you were placed in exclusion proceedings on April 9, 1993. Therefore, the decision to grant your asylum is rescinded as of October 13, 1999 ... You may pursue your request for asylum before the Executive Office for Immigration Review ("EOIR").

Id., Exh. K.

The undersigned notes that Petitioner did not, apparently, seek to challenge the rescission of asylum on any basis prior to filing this habeas petition.

On January 13, 2000, the INS sent Petitioner a "Form I-166," informing him that he was to be removed from the United States pursuant to the 1993 order of exclusion. See id., Exh. L. The form notified Petitioner that arrangements had been made for his removal and instructed him to appear at an immigration office on February 9, 2000. Id., Exh. L. Petitioner failed to appear at the time and place noticed in the Form I-166.

On April 10, 2000, Petitioner filed a motion to reopen his exclusion proceedings with the Executive Office for Immigration Review ("EIOR"). Id., Exh. M. Petitioner asked the EOIR to reopen his exclusion proceedings and also sought a change of venue from New York. See id., Exh. M. Petitioner alleged that "extreme and exceptional circumstances," specifically the medical ailments of cramps and high fever, had prevented his appearance at the exclusion hearing before the immigration judge in 1993. Id., Exh. M. The INS responded to the motion to reopen on August 29, 2000, arguing that Petitioner had failed to show reasonable cause for failing to appear for

-12-

his exclusion hearing in 1993. See id., Exh. N.   The motion to reopen was denied on November 1, 2000. Id., Exh. P.

Petitioner sought review of the denial of his motion to reopen his removal proceedings by the Board of Immigration Appeals ("BIA"). Id., Exh. O.  The BIA dismissed the appeal in a decision issued February 5, 2001. Id., Exh. O.  Petitioner sought reconsideration of this decision, which was denied by the BIA on March 28, 2001. Id., Exh. P.

Petitioner filed a Motion to Reopen and Request for Stay of Exclusion and Deportation with the BIA on August 16, 2005. See id., Exh. Q.  Petitioner sought to re-apply for asylum and also sought to stay his removal, citing 8 C.F.R. § 1003.2. Id., Exh. Q.  Petitioner acknowledged, however, that his motion to reopen was filed beyond the 90-day limit for filing motions to reopen under 8 C.F.R. § 1003.2. Id., Exh. Q. On March 12, 2007, the BIA dismissed Petitioner's motion to reopen. See id., Exh. S.

Petitioner sought review of the denial of his motion to reopen his immigration proceedings by the United States Court of Appeals for the Second Circuit. See id., Exh. T.  On December 13, 2007, the Second Circuit Court of Appeals dismissed the petition for review.  See id., Exh. T.  In its opinion the Second Circuit presumed that Petitioner was in exclusion proceedings, rather than removal proceedings, and determined that Petitioner's motion to reopen his exclusion proceedings was time-barred. See id., Exh. T.

On or about September 23, 2008, the Department of Homeland Security ("DHS"), and Immigration and Customs

Enforcement ("ICE"), successor agencies to the INS, located Petitioner in Modesto, California.  See id., Exh. A.[8]  Petitioner was arrested on an immigration warrant for his failure to leave the United States when ordered to leave in 2000, and taken into ICE custody.  Id., Exh. A.  Citing the order of exclusion issued in 1993, Petitioner was deemed subject to a final order of removal.  Id., Exh. A.

On September 29, 2008, and again on October 7, 2008, shortly after Petitioner was taken into ICE custody, the DHS sent letters to the India Consulate requesting travel documents for Petitioner.  Id., Exh. U.  On November 8, 2005, the Board of Immigration Appeals re-opened Petitioner's exclusion proceedings.  See id., Exh. V.  In the granted motion to re-open, Petitioner did not, apparently, argue the validity of the rescission of his asylee status, but noted he had been in asylee status when the deadline passed for seeking relief from removal based on the Convention Against Torture.  See id., Exh. V.

In his habeas pleading, filed October 16, 2008, prior to the date his removal proceedings were re-opened, Petitioner challenges both the legitimacy of his detention and the validity of Respondents' authority to remove him from the United States. Petitioner asserts the rescission of the grant of asylum was "unlawful and wholly unconstitutional..."  Response at 4. Petitioner contends the rescission of the grant of asylum is

---

[8] The border enforcement functions of the Immigration and Naturalization Service were transferred to the Department of Homeland Security, and to some extent the Immigration and Customs Enforcement agency, on March 1, 2003.  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.

-14-

void because it occurred in violation of his right to procedural due process of law.   Petitioner contends that, because he is still an asylee, the rescission being void, Petitioner may not be removed, or detained pending his removal or further removal proceedings.   Petitioner seeks his release predicated on a declaratory judgment that the revocation of the grant of asylum is void and, accordingly, that Respondents have no basis for detaining Petitioner.

Respondents contend the petition for habeas relief should be dismissed or, alternatively, that relief should be denied.   Respondents assert that, to the extent Petitioner challenges the validity of his order of exclusion subsequent to the grant of asylum and its rescission, the District Court does not have jurisdiction over Petitioner's claims, citing the REAL ID Act of 2005.

Respondents also argue:

> Because the matter has been remanded, Singh is no longer under a final order of exclusion, and will appear before an immigration judge for further proceedings. At that time, Singh may ask for a hearing on the lawfulness of his detention before the immigration judge under Matter of Joseph, 22 I&N Dec. 799 (BIA 1999), which gives the immigration judge authority under 8 C.F.R. § 1003.19 to determine if the Government's basis for detention is sustainable.

Motion to Dismiss (Docket No. 18) at 3.

Respondents further maintain that relief may not be granted on the merits of Petitioner's claims because Petitioner did not exhaust his administrative remedies prior to filing his section 2241 action.   Respondents contend exhaustion is both a jurisdictional and prudential prerequisite to relief.

Respondents also assert that Petitioner has "not requested that he be released from detention on the basis of parole pursuant to § 212(d)(5)(a) of the INA and 8 C.F.R. § 212.5.   Accordingly, under 8 U.S.C. § 1252(d)(1), he has not exhausted these administrative remedies..."  Id. at 3.

Respondents further allege that Petitioner's claim that his detention is not authorized by federal law may be denied on the merits because Petitioner's detention is authorized by 8 U.S.C. § 1225(b)(2).  See id. ("The issue before this Court is not whether INS properly rescinded the grant of asylum. Rather, the issue is whether INS ever had authority to grant asylum in the first place. It did not.").  Respondents contend the grant of asylum was void as ultra vires.  Id. at 2.

Petitioner allows that the motion to reopen was granted and that his removal proceedings have been,

> remanded [] to the Immigration Judge, to determine if the petitioner is eligible for relief under CAT.  The Immigration Judge will not and cannot deal with the issue before this Court, i.e. whether the petitioner was unlawfully and illegally stripped of his status as an asylee and consequently illegally placed in custody as a result of this unlawful stripping of his property rights, i.e. asylee status.

Response (Docket No. 24) at 5.

Petitioner maintains he

> is petitioning this Court strictly and narrowly to reverse the illegal and unlawful rescission of his asylum status by the respondents and to order his release from illegal detention by the Immigration Customs Enforcement Agency ("ICE"), a detention which only flows out of the respondent's unconstitutional act of stripping of his asylum.  The respondents' rescission of the

> petitioner's asylum status is illegal,
> unlawful and violation of due process because
> the respondents did not follow proper
> procedure as outlined in the immigration
> regulations for terminating asylum status....

Id. at 6.

### III.  Analysis of the parties' claims

**A. Jurisdiction of the District Courts over section 2241 petitions subsequent to passage of the REAL ID Act**

A primary effect of the REAL ID Act is to convert section 2241 habeas corpus petitions seeking review of removal orders into petitions for appellate review in order to "limit all aliens to one bite of the apple ... [and thereby] streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review)." Bonhometre v. Gonzales, 414 F.3d 442, 446 (3d Cir. 2005). See also Marquez-Almanzar v. INS, 418 F.3d 210, 216 (2d Cir. 2005).

Section 106(a)(3) of the REAL ID Act of 2005 amended 8 U.S.C. § 1252 to prevent the District Courts from entertaining a "claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title." Subsequent to the REAL ID Act, the District Courts have jurisdiction over a section 2241 petition only to consider the merits of the petitioner's claim that his detention, rather than the validity of the petitioner's order of removal, violates federal statutes or his constitutional rights. See Arreola-Arreola v. Ashcroft, 383 F.3d 956, 964-65 (9th Cir. 2004); Moallin v. Cangemi, 427 F. Supp. 2d 908, 920 (D. Minn. 2006). The Ninth Circuit Court of Appeals has concluded that

-17-

the District Courts have section 2241 jurisdiction only if the issue of petitioner's detention is distinct from the issue of the propriety of their removal.  See Nadarajah v. Gonzalez, 443 F.3d 1069, 1075-76 (9th Cir. 2006).

In this matter the basis for Petitioner's challenge to his detention is the assertion that Respondents violated his constitutional right to due process in rescinding the grant of asylum.  Petitioner does not explicitly challenge the validity of the order of exclusion, issued in 1993, from which Petitioner is currently seeking relief pursuant to the Convention Against Torture in another forum.  Petitioner argues that, in essence, the grant of asylum protected him from the future consequences of the order of exclusion.

The undersigned concludes that the REAL ID Act arguably prohibits the Court from exercising jurisdiction over the petition and that the matter should be transferred to the Ninth Circuit Court of Appeals.  However, in the interest of judicial economy in resolving the motion to dismiss, the undersigned will address the issues raised by the parties. See Kothandaraghipathy v. Department of Homeland Sec., 396 F. Supp. 2d 1104, 1106 (D. Ariz. 2005).

**B. Exhaustion of administrative remedies prior to filing a section 2241 petition**

The exhaustion doctrine provides that, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted." McKart v. United States, 395 U.S. 185, 193, 89 S. Ct. 1657, 1662 (1969) (citations and internal quotation marks omitted).  Exhaustion of

-18-

administrative remedies is only required if either a statute specifically requires exhaustion prior to judicial review or if the relevant administrative scheme requires exhaustion.  Id.

Title 28 U.S.C. § 2241, the statute providing for Petitioner's filing of this habeas petition, does not specifically require exhaustion of administrative remedies. Accordingly, Petitioner is not statutorily obligated to exhaust his claims.

The exhaustion requirement is also be a prudential, rather than jurisdictional, limitation on the Court's authority. Therefore, in some circumstances the Court may entertain claims brought by petitioners subject to ongoing alienage proceedings.

> In determining whether to waive prudential exhaustion, federal courts must balance the interest of the individual in obtaining prompt access to a federal judicial forum against institutional interests favoring exhaustion.
> "[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." [].

Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001), abrogated on other grounds, Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S. Ct. 2422 (2006).

As a non-criminal alien, Petitioner's detention, pursuing a resolution of his CAT claim, is discretionary and Petitioner may request a bond determination hearing before an IJ.  See Matter of Joseph, 22 I & N Dec. 799 (BIA 1999); 8 C.F.R. § 3.19(2)(ii) (2008).  If the IJ grants Petitioner's release on bond, the habeas petition would be moot insofar as it

-19-

seeks Petitioner's release on detention pending the resolution of his immigration proceedings, as distinct from his release predicated on the desired declaratory relief. Accordingly, because Petitioner's release on bond may still be granted by the Immigration Court, Petitioner should be required to exhaust his habeas claims to the extent he seeks his release from detention. See Haddam v. Reno, 54 F. Supp. 2d 588, 599 (E.D. Va. 1999); Van Eeton v. Beebe, 49 F. Supp. 2d 1186, 1189 (D. Or. 1999)(holding that an alien detained pending removal proceedings was not required to exhaust administrative remedies before bringing federal habeas petition where he had been denied release on bail).

The District Court does not have jurisdiction to decide Petitioner's claim for declaratory relief regarding the alleged violation of his purported right to due process, nor does the Immigration Court have jurisdiction to determine Petitioner's constitutional claim.

> We are prohibited from exercising subject-matter jurisdiction when an alien fails to exhaust administrative remedies "unless the petition presents grounds which the court finds could not have been presented in such prior proceeding." 8 U.S.C. § 1105a(c). We agree with the circuits that have considered this issue and hold that we have subject-matter jurisdiction over aliens' unexhausted constitutional claims unless the claims concern procedural errors correctable by the administrative tribunal. See, e.g., Castaneda-Suarez v. INS, 993 F.2d 142, 144 (7th Cir. 1993); Ravindran v. INS, 976 F.2d 754, 762-63 (1st Cir. 1992); Baques-Valles v. INS, 779 F.2d 483, 484 (9th Cir. 1985) (holding that aliens are not precluded from raising due process claims on appeal that were not raised during administrative proceedings because the BIA has no jurisdiction to adjudicate constitutional

issues).

<u>Geach v. Chertoff</u>, 444 F.3d 940, 945 -946 (8th Cir. 2006) (finding the petitioner's equal protection claim was not a correctable procedural claim and, accordingly, holding the petitioner was not required to exhaust).

Pursuant to the REAL ID Act, Petitioner's assertion that his deportation is barred by the grant of asylum, which he asserts was void because it was rescinded only in violation of his right to procedural due process, must be presented to the Ninth Circuit Court of Appeals.  Accordingly, to the extent Respondents contend Petitioner has not exhausted this claim, the undersigned concludes exhaustion is not required and Petitioner should present this claim to the Ninth Circuit Court of Appeals. <u>See</u> <u>Wang v. Reno</u>, 81 F.3d 808, 814 (9th Cir. 1996)(holding that an alien was not required to exhaust his administrative remedies before seeking judicial review of his due process claim because that claim fell outside the scope of the Immigration and Nationality Act); <u>Xiao Ji Chen v. United States Dep't of Justice</u>, 471 F.3d 315, 326 (2d Cir. 2006) (discussing appellate court jurisdiction after the REAL ID Act).

**Respondents' authority to detain Petitioner**

Respondents contend their custody of Petitioner is pursuant to section 235(b)(2) of the INA, codified at 8 U.S.C. § 1225(b)(2), governing the detention of inadmissible and excludable aliens seeking relief based on the Convention Against

Torture.[9]    Respondents  initially  averred  their  purpose  in
detaining  Petitioner  was  to  execute  the  order  of  exclusion
initially issued in 1993.   Respondents now assert that, because
Petitioner's  immigration  proceedings  have  been  re-opened,
Petitioner is being detained at the discretion of the Attorney
General pending a hearing before an IJ regarding his entitlement
to relief from removal.

Petitioner's  detention  is  authorized  pursuant  to
section  1225  if  the  grant  of  asylum  was  void  or  if  the
rescission of asylum was valid.   The undersigned concludes the
grant of asylum was void.   See Noriega-Lopez v. Ashcroft, 335
F.3d 874, 884 (9th Cir. 2003) (holding order of removal issued
without  jurisdiction  was  void  ab  initio);  Zardui-Quintana  v.
Richard,    768    F.2d   1213,   1219-20   (11th   Cir.   1985);[10]
Ramirez-Osorio v. I.N.S., 745 F.2d 937, 941 (5th Cir. 1984).

Had  asylum  been  properly  granted,  Petitioner  would
arguably have been entitled to procedural due process, i.e., the
notice  and  hearing  requirements  of  the  relevant  Code  of

---

[9] United Nations Convention Against Torture and Other Cruel,
Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty
Doc. No. 100-20 (1988), 1465 U.N.T.S. 85.  See also 8 C.F.R. § 1208.16
(regulations implementing the CAT).

[10]
For  these  reasons  we  construe  the  regulatory
framework  as  granting  to  the  immigration  judge
exclusive  jurisdiction  over  applications  to
withhold  the  deportation  of  excludable  aliens.
The district director in the present case had no
authority  to  grant  an  application  to  withhold
deportation  and  therefore  the  application  was
properly denied. The application would properly
have  been  before  an  immigration  judge  who  had
granted a reopening of the exclusion hearing...

Regulations prior to rescission of this status.  However this section provides for the rescission of a grant made "under the jurisdiction of an asylum officer or district director," jurisdiction which, in Petitioner's case, did not exist.  <u>See</u> 8 C.F.R. § 208.15 (2008).  Petitioner does not assert that the official who granted his application for asylum did not have jurisdiction to do so; Petitioner acknowledges that he had been ordered excluded at the time his asylum application was processed.

### IV. Conclusion

The undersigned concludes that the District Court does not have jurisdiction to resolve Petitioner's claim that the rescission of the grant of asylum violated his right to due process of law and that this claim should be transferred to the Ninth Circuit Court of Appeals pursuant to the REAL ID Act. Additionally, to the extent necessary to determine if Respondents are authorized to detain Petitioner pending the conclusion of his immigration proceedings, the undersigned concludes Respondents are authorized to detain Petitioner because the grant of asylum was void *ab initio* being entered without jurisdiction.

**IT IS THEREFORE RECOMMENDED** that the Motion to Dismiss be **granted** insofar as it asserts Mr. Singh must pursue his constitutional claim regarding the rescission of the grant of asylum in the Ninth Circuit Court of Appeals.  The undersigned recommends that the Motion to Dismiss be **denied** insofar as it argues the petition must be dismissed for failure to exhaust

administrative remedies regarding Mr. Singh's constitutional claims, and that the motion be **granted** insofar as it seeks dismissal of Mr. Singh's claim for relief in the form of his release.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir.) (en banc), cert. denied, 540 U.S. 900 (2003). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact

and conclusions of law in an order or judgment entered pursuant
to the recommendation of the Magistrate Judge.

DATED this 4th day of February, 2009.

_____
Mark E. Aspey
United States Magistrate Judge