**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gurmit Singh, aka, Manjeet Singh, | No. CV-08-1901-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Chris Vasquez, et al., | |
| Defendant. | |

Currently pending before the Court is Magistrate Judge Mark E. Aspey's Report and Recommendation, (Dkt.#26.), on Gurmit Singh's Petition for the Writ of Habeas Corpus, (Dkt.#1.), and Defendants' Motion to Dismiss, (Dkt.#18.). After reviewing the record and determining oral argument unecessary, the Court issues the following Order.

**I.     STANDARD OF REVIEW**

The Court reviews the legal analysis in the Report and Recommendation de novo and the factual analysis de novo for those facts to which objections are filed, and for clear error for those facts to which no objections are filed. See 28 U.S.C. § 636(b)(1)(C). United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

**I.     FACTUAL AND PROCEDURAL HISTORY**

Petitioner, Gurmit Singh, also known as Manjeet Singh, is a 53 year old male, born in Punjab, India where he grew up and lived until April 1993, when he first entered the United States. Mr. Singh has resided in the United States without any interruptions since

April 1993. Singh alleges that while in India, he was an active member of the All India Sikh Students Federation ("AISSF"), whose goal is the creation of an independent Sikh state within the territorial boundaries of India. Singh further alleges that as a result of activities associated with AISSF he was arrested more than once by local police authorities and was beaten and tortured while in custody.

Singh alleges that he was forced to flee India under an assumed name, Manjeet Singh. Under this assumed name, on April 9, 1993, Singh arrived in the United States at the New York port of entry (JFK International Airport), by way of London, England. Upon landing in New York, Mr. Singh was immediately apprehended by Immigration and Naturalization ("INS") Agents. Singh submitted sworn statements to INS inspectors that his name was "Manjeet Singh" and that his date of birth was "June 25, 1955." Both of these claims were demonstrably false. Singh also informed INS inspectors that he wanted to apply for asylum in the United States due to persecution that he faced in India.

On the same day Singh arrived, April 9, 1993, INS served Petitioner with a "Form I-122," charging Singh with being excludable from the United States because he did not possess a valid visa or traveling documents. Furthermore, the government alleges that on April 15, 1993, the Form I-122 was filed with the Immigration Judge ("IJ").[1] The Form I-122 notified Petitioner that an IJ would hold a hearing to determine whether or not Petitioner should be allowed to enter the United States. The Form I-122 notified Petitioner the hearing would be held in New York on August 12, 1993. Petitioner was released, i.e., "paroled" into the United States on April 9, 1993, and his presence in the United States was classified as "deferred admission."

---

[1] The government is apparently unable to produce the original filing that was made with the IJ on April 15, 1993. Instead, the government has offered the declaration of Beth S. Liebmann, who is detailed Office of the General Counsel, Executive Office for Immigration Review, Department of Justice. Ms. Liebmann alleges that she "researched the EOIR database as it relates to SINGH and found . . . The charging document in this case was received and filed in the immigration court on April 15, 1993."

On August 12, 1993, an IJ held the noticed hearing in New York, from which hearing Petitioner was absent. The IJ concluded Petitioner was excludable from the United States pursuant to 8 U.S.C. § 1182.

On May 25, 1993, more than one month after the Form I-122 was filed with the IJ, Singh applied for asylum at an INS office in San Francisco, California. This time, Singh used his real name (Gurmit Singh) and birth date (June 28, 1955) in the asylum application. On October 15, 1996, the Asylum Office of the INS located in San Francisco granted Singh's application for asylum. On October 29, 1996, INS in San Francisco sent a letter to Singh informing him that his application had been granted. The letter also informed Singh, among other things, that he may apply for adjustment of status to that of lawful permanent resident provided he remained physically present in the United States for one year subsequent to the date his asylum status was granted.

On February 19, 1998, Singh filed for adjustment of status with the INS to that of lawful permanent resident. Singh filed in the name "Gurmit Singh," and stated his date of birth as "June 28, 1955." His application also incorrectly stated that he had entered the United States "without inspection." Finally, in response to the question "Have you ever been deported from the U.S., or removed from the U.S. at government expense, excluded within the past year, or are you now in exclusion or deportation proceedings?", Singh answered, "No." On February 23, 1999, INS interviewed Singh concerning his application for adjustment of status. The application was never granted. Then, on May 13, 1999, Singh filed a declaration with the INS informing it that he had not been totally forthcoming on his asylum application, because he had been subject to exclusion proceedings in New York.

On October 13, 1999, INS rescinded Singh's asylum status in a letter. The letter notes that Singh had been ordered excluded since, citing 8 C.F.R. § 208.2(b), immigration judges have "exclusive jurisdiction over asylum applications filed by an alien who has been served . . . Form I-122 . . ." INS concluded by stating:

> The INS did not have jurisdiction over your asylum application, because you were placed in exclusion proceedings on April 9, 1993. Therefore, the

> decision to grant your asylum is rescinded as of October 13, 1999 . . . You may pursue your request for asylum before the Executive Office for Immigration Review . . ..

On January 13, 2000, the INS sent Singh a "Form I-166," informing him that he was to be removed from the United States pursuant to the 1993 order of exclusion. The form notified Singh that arrangements had been made for his removal and instructed him to appear at an immigration office on February 9, 2000. Singh failed to appear at the time and place noticed in the Form I-166.

On April 10, 2000, Singh filed a motion to reopen his exclusion proceedings with the Executive Office for Immigration Review ("EIOR"). Singh requested that the EOIR reopen his exclusion proceedings, he also sought a change of venue from New York. The motion to reopen was denied on November 1, 2000. Singh then sought review of the denial of his motion to reopen his removal proceedings by the Board of Immigration Appeals ("BIA"). BIA dismissed the appeal in a decision issued February 5, 2001.

Next, Singh filed a Motion to Reopen and Request for Stay of Exclusion and Deportation with BIA on August 16, 2005. Singh sought to re-apply for asylum and also sought to stay his removal. On March 12, 2007, the BIA dismissed his motion to reopen. Singh then sought review of the denial of the motion to reopen in the Second Circuit. On December 13, 2007, the Second Circuit dismissed the petition. On September 23, 2008, Singh was apprehended by agents from the Department of Homeland Security ("DHS") and taken into federal custody pending deportation.

Lastly, on November 8, 2005, BIA re-opened the exclusion proceedings and remanded, on the grounds that Singh was seeking relief from removal under the Convention Against Torture. On October 16, 2008, prior to BIA granting the motion to re-open, Singh filed the instant Petition for Writ of Habeas Corpus. Singh's petition seeks to review the constitutionality of the October 19, 1999 rescission of asylum by INS. Singh argues that the recision, which was carried out by letter, violates his rights to procedural due process under the Fifth Amendment to the United States Constitution.

## III. DISCUSSION

### A. The District Court's Jurisdiction

Section 106(a) of the REAL ID Act made several significant amendments to the Immigration and Nationality Act's jurisdictional statute at 8 U.S.C. § 1252. In essence, the REAL ID Act clarified that federal district courts lack jurisdiction, habeas or otherwise, to review any removal order for any alien, criminal or non-criminal. See Alvarez-Barajas v. Gonzales, 418 F.3d 1050, 1052 (9th Cir. 2005) ("the Act eliminated habeas jurisdiction, including jurisdiction under 28 U.S.C. § 2241, over final orders of deportation, exclusion, or removal") (emphasis added); Nadarajah v. Gonzales, 443 F.3d 1069, 1075 (9th Cir. 2006) ("The REAL ID Act amends the [INA], by eliminating federal habeas corpus jurisdiction over final orders of removal . . . .").

As such, following the passage of the REAL ID Act, federal district courts have jurisdiction over a section 2241 petition only to the extent that a petitioner's detention—rather than the validity of the petitioner's order of removal—violates federal statutes or his constitutional rights. See Arreola-Arreola v. Ashcroft, 383 F.3d 956, 964-65 (9th Cir. 2004).

Here, the government has argued that where an alien challenges his proceedings in such a way that their claim should have been addressed by an immigration judge, then the REAL ID Act bars an alien from presenting those claims to a federal district court on habeas review. Specifically, the government contends that the effect of the REAL ID Act has divested this Court of jurisdiction to adjudicate any legal issues that are intertwined with Singh's 1993 order of exclusion, unless such a question is entirely independent. See Calcano Martinez v. INS, 232 F.3d 328, 340 (2d Cir. 2000).

Singh has responded by arguing that his habeas petition is not seeking to challenge the August 12, 1992 exclusion order. Singh concedes that any attempt to challenge this order must be administratively accomplished, by going to the IJ, appealing its ruling to the BIA, and ultimately seeking review in the Second Circuit. Instead, Singh argues that the instant petition only seeks to challenge the legality of INS' decision to rescind his grant of asylum

by way of the October 13, 1999 letter. Singh contends that this challenge is more closely analogous to challenging the legality of his detention, since following Singh's reasoning, a alien who has been granted asylum cannot as a matter of law be detained by the federal government for purposes of effectuating deportation. Singh contends that this challenge is substantively unrelated to the 1993 exclusion order.

The Court agrees with Petitioner that the REAL ID Act does not preclude judicial review of the 1999 revocation of asylum by INS. The Court concludes that Singh's attempt to seek habeas review of this decision is not akin to challenging the validity of the 1993 order of exclusion, since the grant of asylum was unrelated to the order of exclusion. Instead, the issue of whether Singh is an asylee goes to the issue of the appropriateness of his confinement, and the REAL ID Act has not barred judicial review of such a claim through the procedural mechanism of a petition for the writ of habeas corpus.

### B. The Merits of Singh's Petition

INS does not have the ability to grant asylum administratively to aliens in exclusion proceedings. As 8 C.F.R. § 208.2(b) makes clear:

> (b) Immigration judges shall have **exclusive jurisdiction** over asylum applications filed by an alien who has been served notice of referral to exclusion proceedings under part 236 of this chapter, or served an order to show cause under part 242 of this chapter . . . .

8 C.F.R. § 208.2(b) (1993) and (1996) (emphasis added).

After reviewing the record here, it is obvious that Singh was involved in ongoing exclusion proceedings in New York when he applied for asylum in San Francisco. Specifically, on April 9, 1993, INS served Singh with a Form I-122, charging that he was excludable. On April 15, 1993, the Form I-122 was supposedly filed with the IJ in New York. At the very latest then, Singh was in exclusion proceedings as of April 15, 1993. On the other hand, Singh did not apply for asylum in San Francisco until May 25, 1993, more than one-month after exclusion proceedings were initiated by the lodging of a Form I-122 with the IJ. According to the plain language of 8 C.F.R. § 208.2(b), rather than filing a new

claim in San Francisco Singh should have prosecuted his claim for asylum before the IJ in New York during exclusion proceeding.

Based on the aforementioned scenario, the government contends that because INS never had the requisite jurisdiction to grant Singh asylum, the purported grant of asylum on October 15, 1996 was ultra vires and void ab initio. As such, because the grant of asylum was void for a lack of jurisdiction, according to the government, INS was entitled to inform Singh that his asylee status was revoked by way of letter—or by any other means. To put it another way, since the grant of asylum was void on its face, the government claims that it was not actually taking away a substantive right from Singh when it informed him on October 13, 1999 that the United States was no longer going continue recognizing him as an asylee.

While there is some strength to the government's logic, its position seems counter to explicit requirements of 8 C.F.R. § 208.24. The termination of asylum is controlled by 8 C.F.R. § 208.24. That regulation states that "[p]rior to the termination of a grant of asylum . . . the alien shall be given notice of intent to terminate, with the reasons therefor, at least 30 days prior to the interview [that is required under § 208.24(a)]." The regulation further requires that "[t]he alien shall be provided the opportunity to present evidence showing that he or she is still eligible for asylum. . . . If the asylum officer determines that the alien is no longer eligible for asylum . . . the alien shall be given written notice that asylum status . . . [is] terminated."

As a preliminary matter, the Court notes that the San Francisco INS office should not have granted asylum to Singh, since he was in exclusion proceedings at the time, and any attempt to secure asylum needed to have been presented to the IJ as part of the exclusion proceedings in New York. However, the fact of the matter remains that INS did indeed provide Singh with a grant of asylum. Because asylum was granted, regardless of whether it proper or not, INS was then obligated under 8 C.F.R. § 208.24 to have provided Singh with an opportunity to defend his status under the applicable regulations. The government has not presented this Court with any convincing case law to the contrary.

Notwithstanding the fact that the INS acted in a manner contrary to 8 C.F.R. § 208.24 when it rescinded Singh's grant of asylum, a meritorious habeas petition cannot lie unless Singh can prove that the manner in which his asylee status was rescinded violated the federal constitution. Unfortunately, the Parties have not done a sufficient job of explaining how the act of rescinding the grant of asylum might have violated procedural due process. The Court notes that merely because the government's actions were inconsistent with 8 C.F.R. § 208.24 does not mean that the federal constitution was similarly violated.

There is a significant distinction between aliens who have "entered" the country and those who have been excluded: aliens who have entered the country are protected by procedural due process rights, whereas aliens who may be physically present within the country but who are requesting admission to the United States must be content with "whatever process Congress has authorized" with regard to their immigration proceedings and any resulting loss of their liberty. See Borrero v. Aljets, 325 F.3d 1003, 1007 (8th Cir. 2003.

As an alien admitted into the United States under a grant of asylum from INS, Singh was undoubtedly entitled to procedural due process under the Fifth Amendment to the United States Constitution. See Martinez-De Bojorquez v. Ashcroft, 365 F.3d 800, 803-04 (9th Cir. 2004); Landon v. Plasencia, 459 U.S. 21, 32-33 (1982); Dobrota v. INS, 311 F.3d 1206, 1210 (9th Cir. 2002)). Under the case of Mathews v. Eldridge, 424 U.S. 319, 335 (1976), the Supreme Court provided several factors to be considered when an individual raises a claim that an administrative procedure which affects liberty interests denies due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id.

In applying the relevant factors to the case at hand, under the first Mathews factor, the private interests at stake in a termination of asylum are significant. As the Supreme Court

noted years ago, "[t]hough deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom." Bridges v. Wixon, 326 U.S. 135, 154 (1945). Turning to the second Mathews factor, there is a substantial risk of erroneous deprivation through the procedures utilized by INS in rescinding asylum via a mailed letter. This manner of termination does not account for anything other than post hac notice to the asylee that he or she is no longer entitled to any protection. This method does not account for any errors in transmission, even minor typographical mistakes. Furthermore, there is a great deal of value that is added when the government complies, or comes close to complying, with the dictates of 8 C.F.R. § 208.24. This regulation provides an asylee with pre-deprivation notice, permits an asylee to interview with federal investigators, and then to defend his or her rights by presenting evidence demonstrating their entitlement to continued protection as an asylee within the United States. With respect to the final Mathews factor, the Court notes that additional burden imposed on the government by having it comply or come close to complying with the requirements of 8 C.F.R. § 208.24 are rather minor.

To conclude, all of the Mathews factors weigh in favor of a finding that due process requires more than sending an after the fact letter of rescission when the government terminates a grant of asylum.

In order to succeed, due process challenges to immigration proceedings also require a showing of prejudice. See Ortiz v. INS, 179 F.3d 1148, 1153 (9th Cir. 1999). To show prejudice as a result of a constitutional violation, a petitioner must show that the inadequate procedures occurred "in a manner so as potentially to affect the outcome of the proceedings." Hartooni v. INS, 21 F.3d 336, 340 (9th Cir. 1994).

In the instant case, the constitutional error—which was the government's failure to provide Singh with minimum procedural protections under the Fifth Amendment—did not result in any prejudice. Even if INS had provided Singh with notice, a hearing before a neutral arbiter, and the opportunity to present evidence, all protections afforded under 8 C.F.R. § 208.24, the agency would have still unquestionably reached the same result and

terminated Singh's asylum. This is because under 8 C.F.R. § 208.2(b), the IJ presiding over Singh's exclusion proceedings in New York had exclusive jurisdiction to determine asylum, and the San Francisco INS office which granted asylum lacked the statutory authorization to make such a decision. Assuming that INS or DHS had at some point provided Singh with the proper level of procedure owed under the due process clause when, the result would have been the same, since the initial grant of asylum was ultra vires. Therefore, Singh cannot show that the impermissible manner in which his asylum was terminated could have resulted in any prejudice. Because , the constitutional defect was harmless, Singh's petition for the writ of habeas corpus fails.

**Accordingly,**

**IT IS HEREBY ORDERED** granting Defendants' Motion to Dismiss, (Dkt.#18.).

**IT IS FURTHER ORDERED** declining to adopt the Report and Recommendation of the Magistrate Judge as Order of this Court.

**IT IS FURTHER ORDERED** overruling Petitioner's Objections to the Report and Recommendation.

**IT IS FURTHER ORDERED** dismissing Petitioner's Petition for the Writ of Habeas Corpus, (Dkt.#1).

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

DATED this 30th day of September, 2009.

_____
Mary H. Murguia
United States District Judge